WILLIAM JACKSON v. WILLIAM O'CONNELL, Chief of
Police, City of Pensacola.

154 So. 697.
Opinion Filed May 7, 1934.
Petition for Rehearing May 28, 1934.

*A. A. Fisher* and *J. McHenry Jones,* for Plaintiffs in
Error;

*Ernest E. Mason,* for Defendant in Error.

BUFORD, J.—This cause comes before us on writ of error
to a judgment of the Circuit Court denying a petition for
writ of habeas corpus.

The order of the court below recites the following:

"This cause coming on to be heard upon petition of William Jackson for Writ of Habeas Corpus, to release him from alleged unlawful imprisonment for the reasons set forth in said petition, and after due notice of the presentation of said petition, and the argument of counsel for the respective parties, the Court being fully advised in the premises, and of its opinion, it is considered by the Court that from the record and the proceedings that issuance of a Writ of Habeas Corpus would be futile under the circumstances, and it appearing on the face of the petition that the party in custody would be remanded if said Writ should issue and it further appearing to the Court that the proper procedure to adopt is that set forth in the case of Lee v. Pan Pelt, 57 Fla. 94, 48 So. 632, it is therefore," etc.

The petition shows that the petitioner was arrested and was held in custody under a charge contained in an affidavit wherein it was alleged that he had violated a certain ordinance of the City of Pensacola amending Section 830 of Chapter 25 of the City Code, "by then and there setting up and operating a certain slot machine known as 'Mills O. K. Vender,' which in return for coin deposited therein, dispenses merchandise of the value of such coin and in addition thereto, dispenses at occasional and uncertain intervals a varying amount of metal slugs or tokens, without first procuring a license for the fiscal year of 1933-34, in violation of the Ordinances of said City, in such cases made and provided."

The city ordinance provides:

"Section 1. That Section 830 of Chapter 25, Code of Ordinances, 1920, of the City of Pensacola, insofar as the same relates to slot machines, be, and the same is, hereby amended to read as follows:

"Lung testers, striking machines, weighing machines, chewing gum stands, automatic hand drying machines, cigarette vending machines, stamp vending machines, candy or peanut vending machines, and Whiffle boards or other boards of like character, per year or fraction thereof, for each, $5.00.

"All other slot machines, including vending machines which in return for a coin deposited therein dispense merchandise of the value of such coin, and in addition thereto dispense at occasional and uncertain intervals a varying amount of trade checks, coupons, metal slugs or tokens, whether the same be or be not redeemable in money, merchandise, or other thing of value, and that certain type of slot machine known as 'Mills O. K. Vender,' per year or fraction thereof for each, $10.00."

Section 4 of the ordinance provides:

"Section 4. This Ordinance shall be published and shall take effect October 1st, 1933."

The ordinance must be construed as a revenue measure and as such its illegality has not been made to appear. The mere fact that the ordinance makes the license tax of $10.00 applicable to that certain type of slot machine known as "Mills O. K. Vender" together with all other slot machines "which in return for a coin deposited therein dispense merchandise of the value of such coin and in addition thereto dispense at occasional and uncertain intervals a varying amount of trade checks, coupons, metal slugs or tokens, whether the same be or be not redeemable in money, merchandise or other thing of value" does not create an unlawful discrimination against slot machines of the type known as "Mills O. K. Vender."

The petition on its face shows that the machine comes within the purview of that part of the ordinance requiring

the payment of a $10.00 license whether it happened to be of the type known as "Mills O. K. Vender" or not.

Attached to and made a part of the petition is a description of the machine as given by the United States District Judge for the Northern District of Florida in a case wherein he entered a restraining order prohibiting the seizure of such machines as a gambling device. The learned Judge said of the machines known as "Mills O. K. Venders":

"When operated for the vending or sale of candy or. confections and for the advertisement or amusement feature. described below as follows:

"By the deposit, by the patron of said vending machine, of a nickel (5 cent piece) in the slot provided therefor on said machine, pulling the lever attached to the side of said machine and turning the knob below, which in each instance releases into the tray at the bottom of said machine one, and only one, standard five cent package of mints or candy confection. Said operation also causes the cylinders on the front of said machine to spin, creating a flash of color, intended to catch the eye and attract the attention of others to said machine and displays on said cylinders, to the observer, when the said cylinders come to a rest, words and sentences intended to amuse and attract the attention of the patron and other persons to said machine. Said machine when operated as above described may drop into said tray, at intervals, metal slugs or tokens from two to twenty in number which are not redeemable in money, merchandise or other thing of property or money value, but are used solely to operate the advertising or amusement cylinders on said machine, as above described, in which operation, by the use of said metal slugs or tokens, said machine is so constructed that it does not release any mints, candy, confections, merchandise, money or other thing of property or

money value, but may at intervals release additional metal slugs of the same kind for the sole purpose of inducing the customer or operator to continue to operate said amusement feature above described and to thereby advertise said vending machine by causing other persons to be attracted thereto by said flashes of color and by said amusing words and sentences on said cylinders.

"But this decree is not to be construed as enjoining or restraining said defendants, or any of them, from seizing, taking possession of, confiscating or molesting any of the vending machines herein described which may be found to be operated in their jurisdiction, in a manner different from that herein above described, so as to commit a violation of the gaming laws of the State of Florida."

The license tax imposed is not for the operation of a machine used as a gambling device, but is imposed for the use or operation of just such a machine, as is described in the order of the District Judge, and just as the petitioner alleges the machine which he operated without the license to have been.

We observe that in the briefs for both parties to this litigation it is asserted that the ordinance imposed a tax on machines of the character here under consideration of $100.00 per annum, while the record shows that the ordinance only requires the payment of $10.00 for the license.

We think that it is entirely immaterial insofar as the legality of the ordinance is concerned, whether the ordinance provides for the payment of $10.00 license fee or $100.00 license fee. The only question which the difference might present would be, "Is a license fee of $100.00 so unreasonable as to require the court to strike down the ordinance on this ground? It cannot be reasonably asserted or maintained that the operation of a slot machine, such as that

here under consideration, constitutes a useful occupation or business. What everybody knows, the courts are presumed to know and it is generally known that slot machines, such as that here under consideration, even though not used as a gambling device, are not conducive to frugality, good morals or public welfare. It is quite well settled that as a general principle the amount which may be required under an ordinance whether a city exercises police power must be limited and reasonably measured by the costs of the issuance of the license and the costs incident to regulating and inspecting the activity for which the license is required. But a wider latitude is allowed when imposing special license tax upon particular businesses and occupations as a source of revenue. The general doctrine applying to licenses levied under the police power applies likewise to the exercise of useful occupations which are not detrimental to the public health or welfare and may not be unduly restricted or in effect prohibitive under the guise of police regulation. It is generally recognized by the courts throughout the land that those lines of activity or business which are harmful to public morals or to public welfare, and are productive of injurious result, while not being prohibitive, may be subjected to such a burdensome license tax as will limit and largely discourage the business. See 37 C. J. 188; Schmidt v. Indianapolis, 168 Ind. 631, 80 N. E. 632; Montgomery v. Kelly, 142 Ala. 552, 38 Sou. 67; State v. Wilson, 101 Kan. 780, 168 Pac. 679.

In view of the application of these principles, even if the tax required is $100.00 per annum, and not $10.00 as shown by the record, we cannot say that the amount of the tax required is so unreasonable as to make the same invalid.

The judgment should be affirmed. It is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS and TERRELL, J. J., concur.

BROWN, J., concurs in the conclusion.