167 So.2d 569 (1964)
E.H. FINLAYSON, doing business as E.H. Finlayson & Son, individually and on behalf of all others similarly situated, Appellant,
v.
Doyle CONNER, as Commissioner of Agriculture of Florida, Appellee.
No. 32968.
Supreme Court of Florida.
September 23, 1964.
*570 T. David Burns, Tallahassee, for appellant.
James W. Kynes, Atty. Gen., Joseph C. Jacobs and Wilton R. Miller, Asst. Attys. Gen., for appellee.
O'CONNELL, Justice.
In an action for declaratory decree, the appellant, as plaintiff, sought to have Chapter 61-436, Laws of Florida 1961, declared invalid. The chancellor held the statute valid and this appeal followed.
Section 2, Chapter 61-436, amended those portions of Chapter 578, the "Florida seed law," F.S.A. § 578.01 et seq., which determine who shall be required to register as a seed dealer and the registration fee to be paid.
As amended by Chapter 61-436, Section 578.08(1) requires all persons dealing in sale of seed, except as provided in Section 578.08(4), to register as a seed dealer and pay an annual "registration fee," the amount thereof being based on gross receipts of the dealer during the preceding year. Section 578.08(4), as amended, reads as follows:
"The provisions of this act shall not apply to farmers who sell uncleaned, unprocessed, unpackaged and unlabeled seed, but shall apply to farmers who sell cleaned, processed, packaged and labeled seed in amounts in excess of five thousand dollars in any one year; provided that the first five thousand dollars worth of cleaned, processed, packaged and labeled seed of any farmer shall be exempted from the provisions of this act."
*571 The net effect of the above quoted section is to exempt from registration and payment of a "registration fee" (1) all farmers who sell uncleaned, unprocessed, unpackaged and unlabeled seed, and (2) all farmers who in any year sell less than $5,000 of cleaned, processed, packaged and labeled seed.
The appellant, a farmer-dealer in seed, contends that Chapter 61-436 violates Sections 1 and 12, Declaration of Rights, Florida Constitution, F.S.A., and the equal protection clause of the Fourteenth Amendment to the United States Constitution. Specifically, he presents two questions. First, he says the statute creates an illegal classification between sellers of seed, and second, that it imposes an illegal tax on gross receipts.
We will treat these questions in the order stated.
Section 578.08(4) creates several classifications. First, it classifies farmers according to whether they sell seed that has not been cleaned, packaged, etc., and seed that has been cleaned, packaged, etc. It exempts the former group from its provisions while requiring compliance by the latter. Second, it classifies farmers who sell seed that has been cleaned, processed, etc., according to the gross receipts received from sale of seed, exempting the small seller and requiring compliance by the larger seller. Appellant argues that these classifications create a class within a class and are illegal. He does not argue that farmers may not be the subject of a classification.
This Court is committed to the rule that a classification will be upheld, and will not be held to be a violation of equal protection of the laws, if there is a just, fair and practical basis for the classification, and it is based on a real difference which is reasonably related to the subject and purpose of the regulation. If there is a reasonable and practical ground of classification for legislative regulations under the police power, it should be upheld even though another classification or no classification would appear more reasonable. Numerous cases stating these principles are cited in 6 Fla.Jur. Constitutional Law Section 304.
The question for decision is whether the classifications established in the statute rest on some fair and practical basis, and are based on some real differences reasonably related to its purpose. In short, is the discrimination practiced by the classifications based on reason, or can it be said to be arbitrary and capricious?
It is not disputed that the selling of seed affects the public interest and use of the police power in regulating the sale thereof is justified. The object of the "Florida seed law" is to protect the public in the purchase of quality seed for agricultural and gardening purposes. It does this through the registering, inspecting and labeling requirements.
The trial court held, and we think correctly, that the classification, under which farmers selling uncleaned, unpackaged, etc., seed were exempted from the requirements of the statute while those selling cleaned, packaged, etc., seed were not, is reasonable.
As the chancellor noted, many uncleaned seeds are sold for consumption by man and beast as food, which use has little or no relation to their quality for agricultural use. It is unnecessary to inspect or test these seed in order to accomplish the purpose of the seed law.
Moreover, if the uncleaned seed sold by the farmer go to a dealer who then sells it as cleaned, processed, packaged and labeled seed, the statute requires that such be done according to the stringent provisions of the seed law. It would be a useless, wasteful duplication to require the uncleaned seed to be inspected and tested in the hands of the farmer and require the same seed to go through the same procedure again in the hands of the dealer.
We find this classification to be reasonable.
*572 The next classification for discussion is the one which exempted from the statute farmers who sell, in any one year, less than $5,000 in cleaned, processed, packaged and labeled seed.
In his brief, appellant points out that, as originally presented to the legislature, Chapter 61-436 exempted farmers who sold less than $1,000 of seed, either cleaned or uncleaned. Appellant admits that forceful argument could be made in support of this classification "because the farmer in such category is not engaged in the business of growing agricultural or vegetable seed as an occupation."
We fail to see the distinction in principle between the exemption of farmers who sell $1,000 and those who sell $5,000 of seed. The difference is only one of degree. If the former classification could be validly drawn by the legislature we think it could adopt the latter one without violating reason.
Referring again to the final decree, we find that the chancellor, in upholding this classification and exemption, was of the opinion that in regulatory statutes of this nature the legislature must face practicality and determine whether the expense and effort involved in enforcing the regulations against the sellers of relatively small quantities of seed is justified when weighed against the protection afforded the public interest as affected by such sales.
The chancellor held that the legislature had the duty and power to draw a line of demarcation separating the regulated and unregulated sellers; that the line drawn was not shown to be clearly arbitrary nor unreasonable; and that the classification and the exemption based thereon were valid legislative conclusions.
We agree with the chancellor's reasoning and conclusion that the classification and the exemption are not unreasonable, arbitrary nor capricious.
The principle of law involved here is not dissimilar to that involved in Richmond v. Florida State Board of Architecture, Fla. 1964, 163 So.2d 262, in which this Court held that a classification based on cost of structures involved was a valid basis for determining applicability of Chapter 467, F.S.A., regulating the practice of architecture.
We come then to the appellant's last contention, i.e., that the registration fee is an illegal tax upon gross receipts.
As a reading of the pertinent section of Chapter 61-436 will reveal, the amount of the registration fee required to be paid is based on gross receipts of the registrant dealer during the preceding year. While the amount of the fee is greater for a dealer with larger gross receipts, the amount of the fee is not in direct proportion to the increase in gross receipts. `Percentagewise,' the dealer with larger gross receipts pays less than the smaller dealer.
We start this discussion by stating that we find the "registration fee" to be an inspection fee and not an excise tax passed as a revenue measure. These fees are deposited in the state treasury to the credit of the general inspection trust fund out of which the expenses incident to the enforcement of the seed law are paid. Section 578.22, F.S.A.
Appellant relies heavily on Volusia County Kennel Club v. Haggard, Fla. 1954, 73 So.2d 884, in which this Court struck down a graduated tax on daily gross receipts of dog tracks, because the tax exacted different amounts from persons similarly situated for doing identical acts. That case is not comparable to this one for many reasons, the foremost one being that the dog track tax was a revenue measure not a license tax or inspection fee or tax.
While a revenue measure based on gross receipts must apply equally to all for the privilege of doing the same act, that is, making a sale or completing a transaction, the test of the validity of an inspection fee is that such fees must bear a *573 reasonable relationship to the cost of the inspection service or the protection rendered thereby. See 44 C.J.S. Inspection, § 12, and cases cited therein.
Even if the registration fee in this case were held to be a license tax, the fact that those making greater use of the privilege are charged a larger fee (but one that represents a smaller percentage of the total sales of the dealer) would not invalidate the tax.
This Court has repeatedly held that a license tax need not be identical for each licensee, and that it need not be limited to the exact expense of issuing the license. We have held that licenses ar fees charged for services rendered, and may include any reasonably probable cost of supervision, regulation, inspection and examination that may be required to be rendered by the licensing authority. To be valid such charges only need be commensurate with the services required to be rendered by the licensing body. State ex rel. James v. Gerrell, 1938, 137 Fla. 324, 188 So. 812; State ex rel. Harkow v. McCarthy, 1936, 126 Fla. 433, 171 So. 314; Jackson v. O'Connell, 1934, 114 Fla. 705, 154 So. 697; Heriot v. City of Pensacola, 1933, 108 Fla. 480, 146 So. 654; City of Jacksonville v. Ledwith, 1890, 26 Fla. 163, 7 So. 885, 9 L.R.A. 69; and Young v. Thomas, 1879, 17 Fla. 169, 35 Am.Rep. 93.
The obvious purpose of the "Florida seed law," and particularly those provisions that deal with the sale of cleaned, processed, packaged and labeled seed, is the improvement of the quality of such seed and the protection of the public against fraud in the sale thereof. The purposes of the seed law are enforced primarily through the inspection services rendered by the State through the Department of Agriculture.
The cost of inspection and enforcement no doubt increases with the quantity of seed involved. However, the cost is not likely to increase in direct proportion to the increase in quantity of seed measured by dollar volume of gross sales or otherwise. This is so because in all probability it costs less to inspect seed in larger lots than in smaller ones. Therefore, it requires no effort to find a reasonable relationship between the cost of the service rendered by the state and the graduated registration fee imposed on those who receive the service.
The appellant has made no showing that the registration fees are not reasonably related to the costs of the inspection and enforcement which is supported by the fees. In the absence of proof to the contrary, unless it be arbitrary or capricious on its face, we are bound to accept the legislative determination as being reasonable and valid.
Heriot v. City of Pensacola, supra, involved a tax on purchase of utilities, such tax having the elements of both a license and an excise tax. In that case this Court said at p. 657 of 146 So.:
"The law guarantees to everyone the equal protection of the law, but does not require that the tax of the kind here considered, in all instances and under all conditions, should be equal. The taxing authority has wide discretion in imposing license taxes, and, unless there can be no substantial basis for discrimination and classification and in fixing the amount of license so that the discrimination must be regarded as purely arbitrary and unreasonable under every conceivable condition in practical affairs, the courts will not interfere."
What was said in that case regarding the validity of an excise tax applies with equal or greater force in this case involving an inspection fee.
The statute came to this Court clothed with the presumption of validity. The appellant has the burden of showing the statute to be invalid. He has not met this burden.
*574 For the reasons above expressed the decree of the chancellor is
Affirmed.
DREW, C.J., and THOMAS, ROBERTS, THORNAL, CALDWELL and ERVIN, JJ., concur.