276 So.2d 214 (1973)
The CITY OF MIAMI, Florida, a Municipal Corporation, Organized and Existing under the Laws of the State of Florida et al., Appellants,
v.
I.C. SALES, INC., a Florida Corporation, and Folz Vending Company, Inc., a New York Corporation Authorized to Do Business in Florida, Appellees.
No. 72-582.
District Court of Appeal of Florida, Third District.
April 17, 1973.
*215 Alan H. Rothstein, City Atty. and S.R. Sterbenz, Asst. City Atty., for appellants.
A.J. Ryan, Jr. and George A. Shahood, Dania, for appellees.
Before PEARSON, CHARLES CARROLL and HAVERFIELD, JJ.
CARROLL, Judge.
This is an appeal by the defendants below, the City of Miami and certain city officials, from a declaratory judgment holding an occupational license tax relating to certain merchandise vending machines, imposed by ordinance of the City of Miami was confiscatory and invalid.
On February 5, 1969, the appellees I.C. Sales, Inc., hereinafter referred to as "Sales," and Folz Vending Company, Inc., herein referred to as "Folz," filed a petition for a writ of mandamus against the City of Miami, its tax and license supervisor, and its director of finance. It was alleged that the petitioners were operators of merchandise vending machines, and operated such machines in the City of Miami; that under a provision of the code of the City of Miami an occupational license tax had been imposed in the amount of $1.50 on each 1 cent (coin operated) machine and $8.50 each on such machines other than a 1 cent machine.
The petition made a two pronged attack on the city license tax. First, invalidity thereof was claimed on the ground that the city was not authorized to impose such a license tax in an amount greater than one-half of the similar tax of 75 cents annually per machine imposed by the state under Chapter 205 Fla. Stat., F.S.A. Second, it was contended the tax imposed by the city was so great as to be confiscatory. The petitioners alleged that they had requested the city to issue licenses for operation of such machines upon payment by them of 37 1/2 cents per machine and that the city had refused to do so. An alternative writ of mandamus was issued commanding the respondents to issue such licenses to the petitioners in accordance with the application in the petition (that is, for 37 1/2 cents per machine) or show cause, etc.
Following trial of the cause, a judgment was entered revealing that the court had recognized the cause as one for which mandamus was not proper, and had treated it as one for declaratory judgment. Therein the court held the annual $1.50 license tax per machine on the 1 cent machines was valid, but held that the $8.50 tax on the 5, 10 and 25 cent machines was "excessive and confiscatory," and mandatorily directed the city to issue licenses to the plaintiffs on the 5, 10 and 25 cent machines (apparently without payment of any license tax except on the 1 cent machines), reserving jurisdiction to review as to "reasonableness" any new license tax if one should be imposed thereafter by the city for operation of said machines.
The alternative ground relied on in the complaint for relief, which was that the city could not lawfully impose a license tax thereon greater than one-half of the license taxes imposed by the state law for operation of such machines, not referred to in the judgment, appears to have been rejected by the trial court, and properly so, because of a provision in the city charter, by virtue of which such license taxes could be imposed by the city in an amount higher *216 than one-half of the license taxes imposed by the state law.[1]
The basis upon which the trial court held the license taxes were confiscatory was upon finding, as to the plaintiff Folz, that with its expenses plus the license taxes on the 5, 10 and 25 cent machines the operation thereof in the city resulted in a loss.
Harold Folz, vice-president of the Folz company, testified that the company operated approximately 90,000 machines, throughout the 48 states of continental United States; that approximately 4,000 of such machines were in operation in Florida (the testimony did not show how many were operated in Miami, but the complaint alleged there were 190); that the machines cost between $11 and $16 each (elsewhere it was shown that such machines had an average useful life of six years); that the amount produced per machine on a national average was something less than one dollar a week, and that operation thereof in Miami was "a little bit better," producing $1 per week per machine, or $52 a year, with the 25 cent machines producing 50 to 75% more (which would be approximately $75 to $90 per machine.) There was no breakdown to show how many of each type were placed in Miami.
The Folz evidence was that its expenses left 5% profit, exclusive of the license taxes. The expenses indicated by Folz were 30% of the gross paid to the owner or operator of the stores in which the machines were located, 35% of gross as being the cost of merchandise for use in the machines, and 30% of the gross as the cost of operation, including payment of executive salaries. Folz testified that its (4,000) machines operated throughout Florida resulted in a loss, and attributed the loss to the amounts of the license taxes imposed by the Florida municipalities.
The evidence as to gross receipts from the Sales company machines was given by reference to actual figures appearing on the company's books. The Sales company maintained 45 machines in the City of Miami. It was shown that the gross receipts of a sample penny machine were $38.80 for six months, or $77.60 per year. Ten cent machines were shown to produce $43.50 for six months, or $87 per year. The gross receipts from the 25 cent machines were shown to be from $10 to $25 per machine per month, or, as an average, an annual gross of $240 per machine. Sales' expenses were substantially in the same proportion as those of Folz, but were somewhat less, and were said to leave a 10% profit exclusive of the license tax. Regarding the Sales operation in Miami, as in the case of Folz, there was no breakdown to show how many of each type of machine were included in the total of its 45 machines. On the figures disclosed as to Sales it did not appear that the expenses including license taxes were such as to make its operation unprofitable, and the court made no finding with regard thereto.
The tax and license supervisor of the City of Miami testified that for the current year the city had licensed the operation *217 of 2,455 merchandise vending machines (of which number the plaintiffs' machines represented less than one-tenth). There was no evidence as to the profit or loss experienced by the other operators of similar machines so licensed by the city. In the absence of evidence to the contrary, it would appear to be reasonable to assume that such other operators were not customarily operating at a loss.
In sum, the operators' challenge of the validity of the city's occupational license tax on such machines was predicated on a showing that one operator presented evidence that with payment of the license tax his operation of such machines in the City of Miami resulted in a slight loss, not dissimilar, however, to the result of its operation of such machines in other municipalities in the state. Although its loss was attributed by Folz to the amount of the municipal license tax, in a business of that nature which ordinarily involves only a small margin of profit, such a loss could as well have resulted from other factors incident to the operation of the business (or from competition in Miami, which was evident), for which the exercise of the taxing power could not be charged.
Here the trial court did not find, nor does it so appear, that the occupational license tax in question was patently excessive, or unreasonable in amount as compared to such excise taxes as levied by other municipalities. On the contrary, in certain decisions it was revealed that license taxes of substantially similar amount are not unusual, and are approved. Dunlap v. State, 16 Ala.App. 440, 78 So. 638 ($10 per machine for machines other than 1 cent machines, and $5 for the latter); Jackson v. O'Connell, 114 Fla. 705, 154 So. 697 ($5 license fee for machines dispensing chewing gum or candy or peanuts); City of Harrodsburg v. Devine, Ky. 1967, 418 S.W.2d 426 ($10 per machine on coin operated merchandise vending machines, held valid); Carolina Music Co. v. Query, 192 S.C. 308, 6 S.E.2d 473 ($15 per machine operated for music, games or amusements held valid, and $10 for merchandise vending machines).
A showing that in the business of one operator of vending machines in the City of Miami its expenses, including occupational license taxes, were such that no profit was made does not establish that the city's license tax of $8.50 (or of $10 per machine to which it later was increased) is excessive or confiscatory. On this point in Dunlap v. State, supra, the Alabama Court said:
"The tax imposed is $5 per annum for each penny-in-the-slot machine, and prima facie is not unreasonable. The reasonableness of a license tax is not determined by the business done by a single individual (N.C. & St. L. v. Attalla, 118 Ala. 362, 24 So. 450), nor should it, we think, be determined with reference to slot machines when used for the sale of a single kind of merchandise. The law is not discriminatory, as the imposition of the license is on all alike. It might not be a profitable way to sell chewing gum, but that does not establish the fact that slot machines could not be operated profitably in other ways, and for the sale of other articles. The license is not upon chewing gum nor upon dealers in chewing gum, but upon penny-in-the-slot machines, for whatever purpose or purposes they may be operated. * * *"
In Carolina Music Co. v. Query, supra, in upholding an occupational license tax of $15 per machine for music dispensing machines, the South Carolina Court said (6 S.E.2d at 478-479):
"In the light of the statements contained in the record reflecting the returns on the machines and the expense involved in connection therewith, we admit we have been perplexed as to whether the tax is confiscatory, but the thought occurs to us that these machines could be so located for operation that any tax would be confiscatory. In the same manner that Section 6347 of *218 the Code economically regulates the number of pool or billiard tables in operation in the confines of municipal corporations, so will this statute economically regulate the number of these machines placed in operation."
In Freeman v. Tittsworth, 126 Fla. 483, 171 So. 307, in rejecting a contention that an occupational license tax in a certain amount imposed on auctioneers was unreasonable and confiscatory, the Supreme Court, speaking through Justice Terrell, said:
"This court has repeatedly approved the doctrine that while it has the power to declare license laws invalid because of unreasonable and arbitrary exactions, yet such power will not be exercised unless the amount of the license tax is so great or the classification so palpably arbitrary as to be beyond the necessities for the legislation. State ex rel. Bonsteel v. Allen, 83 Fla. 214, 91 So. 104, 26 A.L.R. 735; Di Lustro v. Penton, 106 Fla. 198, 142 So. 898; Greenleaf & Crosby Co. v. Coleman, 117 Fla. 723, 158 So. 421; Jackson v. O'Connell, 114 Fla. 705, 154 So. 697."
In conformity to the precept and policy there announced by the Supreme Court, we hold that the occupational license tax on the 5, 10 and 25 cent machines was not shown to be "so great or the classification so palpably arbitrary as to be beyond the necessities for the legislation," and we hold that no sufficient basis was shown in evidence or under the law to prompt or require the invalidation thereof.
The City of Miami was duly empowered to impose the occupational license taxes in question. Operation of such machines in the city was properly conditioned upon the issuance of licenses therefor, and the city was entitled to withhold the issuance of such licenses, for the period involved, in the absence of payment of the occupational license fees thus imposed.[2]
Accordingly, the ruling of the trial court upholding the validity of the city's occupational license tax on 1 cent machines is affirmed; and the holding of the trial court invalidating the city's occupational license tax per machine on the 5, 10 and 25 cent merchandise vending machines is reversed.
Affirmed in part and reversed in part.
NOTES
[1] Applicable at the time involved was § 205.551 Fla. Stat., F.S.A., relating to license taxes on vending machines. Thereunder a merchandise vending machine operator was defined to be a person who operates for profit 35 or more merchandise vending machines. By subsection (2) (b) the annual license tax to be paid by merchandise vending machine operators was stated as follows: "$75.00 for the privilege of engaging in such business, and shall further pay an annual license tax of 75 cents for each machine." As a part of that chapter, in § 205.041(2) authority was given to incorporated cities to impose such occupational license taxes, with the proviso that "The license taxes so imposed shall not exceed fifty percent of the state license tax, except as otherwise authorized by law." [Italics supplied.]

However, the City of Miami was not so limited as to the amount of occupational taxes, because in authorizing imposition thereof the charter of the City of Miami provided: "The amount of such license taxes shall not be dependent upon a general state revenue law."
[2] The judgment in this cause was entered on April 10, 1972. By Chapter 72-306, Chapter 205 Florida Statutes, F.S.A., was repealed, and a new Chapter 205 Florida Statutes, F.S.A., was enacted. By § 205.043 thereof it was provided that imposition of occupational license taxes by the govering body of a municipality was made subject to certain conditions there stated, including (1) that the tax be based on reasonable classifications and uniform throughout any class; (2) that "No occupational license tax levied hereunder shall be at a rate greater than that in effect in such municipality for the year beginning October 1, 1971"; and (3) that such taxes be issued for one year to expire on October 1, of each year, "except as otherwise provided by law." By § 205.062 subsection (4) thereof it was provided said Chapter 72-306 should itself stand repealed on September 30, 1973, and that the termination thereof should not be construed to re-enact any provision of Chapter 205 Florida Statutes.