## John McDaniel v. J. O. Johns et ux.

1. WILL — DEFINITION. — A will is an instrument by which a person makes a disposition of property, to take effect after his decease, and which is in its own nature ambulatory and revocable during his life.

2. SAME — SAME — DISTINCTION BETWEEN WILL AND DEED. — An instrument, in form a deed, which conveys to the grantee an interest *in presenti*, though to be enjoyed in possession *in futuro*, is operative as a deed and not as a will, and the interest of the grantee cannot be defeated by the grantor, after the execution of the deed, even though it be voluntary.

3. DEED — COVENANT TO STAND SEIZED. — A deed, in consideration of natural love and affection, conveying land, but reserving to the grantor the use and occupation of the land during his life, is operative as a covenant to stand seized to the use of the donee, in whom the estate vests in possession, upon the determination of the life estate reserved to the donor.

4. SAME — PERSONAL PROPERTY. — It seems to be well settled that a deed conveying personal property, reserving to the donor the possession and use during his life, is good and valid, though the deed be not made to a trustee for the parties in interest.

APPEAL from the chancery court of Franklin county. SMILEY, J.

The bill presents this case. On the 2d November, 1855, the appellant, then residing here, was possessed of a considerable estate, consisting of lands and slaves. Being then about seventy years of age, and having an aged wife and several children, and desiring to avoid the litigation and expense that might, after his death, follow, if he made a will in common form, and yet to make such division and distribution of his estate, to take effect after the death of himself and wife, as would be equitable and just, in view of prior advancement to some of his children, and of their relative deserts and claims upon his bounty, the appellant made certain deeds of gift, of that date, to his children as hereinafter stated; said several deeds, though separate in form, being and constituting parts of one and the same transaction, and all executed to effect said object, that is to say, his testamentary intent and purpose was attempted through the forms of those apparent deeds.

Thus, to his son James H., and to his daughter Susannah

E., now Mrs. Johns, appellee, he conveyed, in form, certain slaves ; but this gift was coupled with the condition that said donees should pay $3,500 to each of his three other daughters therein named, making in all $10,500 ; said payments being required "to equalize the division of the property," and thus, by another deed of gift, he gave to said James H. certain described lands in this state, but, in said deed there was reserved to appellant and his wife, who is still living, "the right to use and occupy said lands during their lives," and thus, on the same day, by another deed of gift, he gave to said Susannah E., then unmarried, certain other lands in this state, with like reservation, to appellant and wife, of the right to use and occupy the same during their lives, and the said Susannah E. "to have and occupy said lands at and after the death" of appellant and wife, and in case of her death without bodily issue, said lands were to go and descend equally to the other children of appellant, as though said deed had not been made. All of said apparent deeds have been recorded, but were intended "to take effect" upon the death of appellant and wife, and "were parts of an entire transaction; all having their origin in a desire of appellant, as a father, to make a just provision for the future welfare of his children," by making a just and equitable distribution of all the property "which appellant then owned, or might possess at the time of his death, and for no other purpose, and upon no valuable or other consideration." Since the execution of said deeds, appellant has exercised all the right of owner of said lands, "in accordance with the reservations in said deeds," and is still in possession of said lands. At the date of said deeds, the said Susannah E. was the youngest and only unmarried daughter of appellant, and lived with him. Said James H. then lived near to him, and appellant relied on him for that care and attention required by himself and wife at their advanced age ; and which said James H. has always rendered, he having, since his youth, acted as agent for appellant in attending to the business and wants of appel-

lant and his aged wife, his other children were married and living remote from him at the date of said deeds. Said sums, amounting to $10,500, required by said deed of gift of said slaves, to be paid by said James H. and Susannah E., have been all paid by said James H., and no part by said Susannah E. Since said payment, said slaves have become emancipated, and have thus deranged the intended division of the estate, "and defeated the intention for that purpose in the execution of said deeds to the land," and thus, by subsequent events, said intended just division has become unjust and unequal to the said James H.

No third party has acquired any interest in any of said lands, and appellant desires that said two deeds for the same, one to James H. and the other to Susannah E., may be annulled in order that he may, as he proposes to do, make a just and equitable distribution of the same between said children ; and particularly that said James H. may, as far as possible, be compensated for his said payment of $10,500 made to his other sisters, to equalize the distribution as aforesaid.

Said Susannah E. married said defendant Johns, in 1866. Said James H. is willing that said deeds for the land be annulled, and a just distribution be made. Said James H. so paid said charge of $10,500 on said slaves so given to him ; and said Susannah E., under the belief and expectation that said slaves would remain to him at the death of appellant. Said Susannah E. and Johns, her now husband, and said James H. McDaniel, are made defendants. Prayer : That, in order that said original purpose, since defeated as aforesaid, may still be carried out, the said deeds be annulled, upon condition that appellant so dispose of said lands as not to work injustice to said James H., etc., and for other and further relief, etc.

Defendant McDaniel answered, consenting, etc. Johns and wife filed a general demurrer which was sustained, and complainant appealed.

*George L. Potter*, for appellant.

As the exhibits cannot be regarded upon demurrer to the bill, under the late decision in Jones v. Terry, no abstract has been made of the three so-called deeds of gift. But although the case must be decided upon the statements of the bill only, it is believed that those exhibits will, at the proper time, fully establish the claim that those writings were intended to do, and are testamentary, and to be considered only as parts of a will. Thus, the alleged deed to the son for land, recites the desire of the donor "to make provision for his future welfare." It reserves to the donor and his wife the right "to use and occupy" the land during their lives. If these were the only exhibitions of intent, it might be argued that the instrument was a deed, giving to the son a present title with right of future possession and enjoyment; but there is this further provision, showing the intent that the title and the use and occupation of the son should both accrue at one and the same future period. The words are: "My said son to have and occupy the same at and after my death. Him and his bodily heirs to own and occupy the same in fee simple forever." Thus the son is "to have" the land "at and after" the death of the donor and his wife; and he is to "occupy" the same "at and after" the same deaths. Then, and not until then, he is to "own and occupy" the land. The alleged deed to the daughter contains the same decisive words, with a further provision that the other children are to take, in case she should die without bodily issue. But we are not restricted by the form of these instruments. If they were in form absolute deeds of present grant, and with nothing on their face to show a testamentary intent, the donor would be entitled to prove by witnesses, that the instruments were intended as parts of a will, were not deeds, but testamentary writings, as the bill avers these were intended to be.

"A deed, if made with a view to the disposition of a man's estate, after his death, will inure in law, as a devise

or will. * * * And the intention of the maker may be ascertained, not only from the instrument but from extrinsic testimony'' by witnesses or other evidence. Wellborne v. Weaver, 17 Ga. 276, and cases cited. When an instrument was, in form, a present gift, parol proof was admitted to show a testamentary intent and the paper was 'established as a will. Wareham v. Sellers, 9 Gill. & Johns. 98. In another case where a deed in form was held to be a will, the court said : "In ascertaining whether an instrument ought to operate as a will, we may look, not only to the instrument itself, but may inquire into the circumstances under which it was made." Gage v. Gage, 12 N. H. 378.

An instrument in the form of a deed, conveying real and personal estate, is a deed or a will according to the intent of the maker, as shown by the writing or by extrinsic proof. Lyles v. Lyles, 2 Nott & McCord, 534 ; Harrington v. Bradford, Walker (Miss.), 520. Our court of appeals decided that whatever the form, the intent of the maker is to govern ; and that "intent" is to be ascertained by proof of the "attendant and concurrent circumstances." Sartor v. Sartor, 39 Miss. 771, 772. The form of the instrument is immaterial. Milledge v. Lamar, 4 Dess. 617 ; Rigden v. Vallier, 2 ib.; Ves. Sr. 252 ; Ousley v. Carroll, cited in Ward v. Turner, 2 440 ; 1 Williams on Exrs. 89, 90 ; 1 Lomax on Exrs. 17. Our bill charges that these three writings were made with a testamentary intent, were executed with the purpose to make "distribution" of his estate among his children, to take effect after the death of himself and wife, a " distribution" of all the property he then owned, " or might possess at the time of his death ;" "and for no other purpose, and upon no valuable or other consideration." It further charges that said writings were intended "to take effect," at the death of appellant and wife ; and said donees were "to take and occupy said lands at and after the death" of appellant and wife, said "distribution being considered a just provision for the future welfare of his children." It further charges that said three writings, though separate in

form, "were parts of one entire transaction," all made to effect said object, viz. : a testamentary disposition of his estate."

The demurrer admits all these and other allegations of the bill ; and thus both parties agree that these three papers are testamentary writings, constituting parts of, and making together, one will.    And the rule of law is, that in a proper case the courts are to consider several instruments, though "of different natures and forms, as constituting altogether the will of the deceased."  1 Williams on Exrs. 92, 93.    Under this rule, the gifts of the lands to the son and daughter respectively, as well as the gift of the slaves, to them both, are to be considered as subject to "the condition" of payment of the $10,500 to the other sisters.

If these writings are held to operate as deeds, how does Mrs. Johns, the daughter, stand?   The gift upon condition bears date in November, 1855, and since then, a period of some thirteen years had elapsed, at the filing of this bill, and yet she had paid no part of the $10,500, one half of which she was to pay ; and she took upon "condition" to make such payment.   During all that time appellant has held all the property in his own possession, and now after so great a default, so long continued, shall he not continue to hold that property, and may he not well claim that Mrs. Johns has forfeited all right to any part of it, under these instruments?   and may he not insist that the deed of gift to her, for part of his land, shall be annulled and set aside as a cloud on his estate?

The bill avers that James H. McDaniel, the son, consents to the relief sought, and he has so agreed by his answer.

As appellant is still in possession, and the deeds are on record and clouds upon his title, he may well claim that they be annulled by formal decree of the court.

*J. F. Sessions*, for appellees.

An examination of the record will disclose error of counsel for appellant in claiming that the deeds to the land and

slaves were contemporaneous and part of the same transaction. The deeds to the land to son Jas. H. and daughter Susannah were made on November 2, 1855, the deed to the slaves on 12th November, 1857. No condition in the deeds to the land except reservation of life estate. The condition spoken of by appellant, requiring payment of $10,500, is in the deed of 1857, more than two years subsequent, and refers to the slaves, and intended to equalize the division of that species of property in view of former advancements. Intention of grantor, as recited in deeds to the land, was to "make provision for future welfare" of grantees, nothing to indicate that it was designed as a testamentary disposition of his property. No averment in the bill that the conveyance was so accepted by grantees, or that they were cognizant of any such intention, and surely their vested rights will not be disturbed by such mutual reservation now alleged to have been then entertained but not expressed. The substance of the several deeds is recited in the bill, and they are made a part of the bill by its terms.

In addition to the case of Wall v. Wall, 30 Miss. 91, and cases there cited, referred to by Messrs. Yerger, which is deemed conclusive, I call attention to the case of McWillie v. Van Vactor, 35 Miss. 428.

*W. & J. R. Yerger,* on the same side.

There is certainly no error in the decree of the court below. The bill contains no equity upon its face. The deeds which the complainant seeks to set aside are voluntary, it is true, according to the allegations of the bill. But, because they are voluntary, they are not therefore void. A voluntary conveyance, not fraudulent as to creditors, will be enforced between the parties. A court of equity may not lend its aid to a mere volunteer, to enforce a conveyance on his behalf, neither will it interpose, at the instance of the grantor, to set it aside. It may interfere at the instance of creditors or subsequent purchasers, without notice, but as

between the parties themselves it leaves them where the law places them.

Where there is a conveyance or assignment of a legal interest in the property, either real or personal, to trustees, accompanied by a clear declaration of the trust, it is immaterial that the transaction is a purely voluntary one. The title of the trustees under such an instrument is complete and irrevocable, and will prevail against the person creating the trust, and all subsequent volunteers claiming under him, by devise or otherwise. Hill on Trustees, top p. 126 (3d Am. ed.), and cases cited.

There is no difference, in the legal principle, between a voluntary conveyance to trustees and a voluntary conveyance of a legal interest or property to a party directly. If the deed is complete, if the contract is executed, and nothing remains to be done to pass title to the grantor, the instrument becomes complete and irrevocable, and will prevail against the grantor and all subsequent volunteers under him. 2 Story's Eq. Juris., § 706. If the transfer, assignment, trust or conveyance is completed at law, so that no further act remains to be done to give full effect to the title, the courts of equity will enforce it throughout, although it is derived from a mere gift or voluntary act of the party. Story's Eq. Juris. 793 a.

In the present case, according to the showing of complainant, the conveyance was complete at law, no further act remained to be done to give full effect to the title, and so far from a court of equity setting it aside, it would enforce it throughout, according to the rule above laid down.

It is true that, by reason of causes accruing since the several conveyances were made, there has been such a change in the property that, if the conveyances were now to be made, the complainant would not now make them as they were made. But these matters accruing afterward cannot change or affect the rights previously vested and conveyed. The title by the deed was vested, no act by

complainant remained to be done to give full effect to them. The title is a title *in presenti*, though the posses sion is postponed till the death of the complainant. The deed is as perfect and complete in all respects as if posses-sion had accompanied it, and put the property as much beyond the control of the complainant. Complainant could not by his own act set aside the deed, nor has the court of chancery power to do what he could not. The title vested by the deed in the grantees, and no act of the grantor or of the court of chancery can divest it. In legal effect, the rights of the grantees are as as complete, so far as title is concerned, as if possession had been delivered under the deed.

Let us suppose that complainant, with a view of dividing his estate among his children in his life-time, had given and delivered certain slaves to one child and conveyed land to another, and the slaves had afterward been set free, would any one suppose that, because of the emancipation of the slaves and the consequent loss thus sustained by one child, it would be competent for the complainant to set aside the conveyance of the land to the other child, in order to equalize the condition and estates of his children? Such a suggestion would not be entertained for a moment; and yet, in principle, there is no difference between the case sup-posed and the case presented by complainant's bill. The case of Wall v. Wall, 30 Miss. 91, is conclusive against the complainant in this case.

PEYTON, C. J. :

On the 2d day of November, 1855, John McDaniel, in consideration of natural love and affection, conveyed by deed to his son, James H. McDaniel, and his heirs, certain lands situated in Franklin county in this state, reserving to himself and his wife, the use and occupation of said lands during their natural lives. And, on the same day, he made a like deed of gift of certain other lands situate in the same county to his daughter, Susannah E. McDaniel and her

heirs, with the reservation of the use and occupation of the same during the natural lives of himself and wife. And on the 12th day of February, 1857, the said John McDaniel, in consideration of natural love and affection for his son, James H. McDaniel, and his daughter, Susannah E. McDaniel, and for the further consideration of the payment of $3,500 to Elmira Weathersby and a like sum to each Mary Ann Meyers and Louisa Flowers, conveyed to the said James H. McDaniel and Susannah E. McDaniel, certain negro slaves and other personal property, reserving to himself and his wife the use and enjoyment of said property during their natural lives.

These three several deeds of gift were duly acknowledged and recorded in the clerk's office of the probate court of said county of Franklin

The said John McDaniel, on the 28th day of July, 1868, filed his bill in the chancery court of said county, against James H. McDaniel, Joshua O. Johns and Susannah E. Johns, his wife, praying for an injunction restraining the said Susannah E. and Joshua O. Johns, her husband, from conveying or incumbering said property, and that, upon final hearing, the said deeds may be annulled and canceled.

The defendants, Joshua O. Johns and Susannah E. Johns, his wife, demurred to the bill for the want of equity upon its face. The demurrer was sustained and the bill dismissed at the cost of the complainant, who appeals to this court, and assigns for error the action of the court in sustaining the demurrer and dismissing the bill. The question presented by this record for our consideration is, what is the character and nature of these instruments? Are they deeds or parts of a will and testamentary in their character? A will is an instrument by which a person makes a disposition of his property to take effect after his decease, and which is, in its own nature, ambulatory and revocable during his life. It is this ambulatory quality which forms the characteristic of wills; for, though a disposition by

deed may postpone the possession or enjoyment, or even the vesting, until the death of the disposing party, yet the postponement is in such case produced by the express terms, and does not result from the nature of the instrument. Thus, if a man by deed limit lands to the use of himself for life, with remainder to the use of A. in fee, the effect upon the usufructuary enjoyment is precisely the same as if he should, by his will, make an immediate devise of such lands to A. in fee ; and yet the case fully illustrates the distinction in question ; for, in the former instance, A., immediately on the execution of the deed, becomes entitled to a remainder in fee, though it is not to take effect in possession until the decease of the grantor ; while in the latter, he would take no interest whatever until the decease of the testator should have called the instrument into operation. 1 Jarman on Wills, 11.

When tested by this criterion, it will clearly appear that these instruments are not parts of a will, which conveys no present interest, but are deeds which, upon their execution and delivery, convey to the grantee in each particular instance a present interest, an estate *in presenti*, though to be occupied and enjoyed *in futoro*. The grantee, under each of these deeds, takes a vested remainder in fee in the property conveyed, which nothing can defeat or set aside. The bill of complaint states that the complainant adopted the mode of disposing of his property by deed in his lifetime, for the sole purpose of avoiding the litigation and expense which might attend a purely testamentary disposition thereof after his death. From this, it would seem, that he did not himself regard these deeds as parts of a will, which he declined to make for fear of the litigation that might grow out of it after his death, but that he resorted to them as a mode of settling his property in his life-time upon his children so as to prevent litigation. We are to infer, from the language of the bill, that the complainant was satisfied with the disposition which he had made of his property among his children by these deeds, until the eman-

cipation of the slaves, which he had given to one of them, produced an inequality in their shares, which he seeks to remedy by having these deeds set aside, and a resettlement of the property. The bill alleges, that these deeds of gift, by which the complainant made a division of his property, were regularly executed and recorded, and in which the grantor reserved to himself and wife the use and enjoyment of the property during their natural lives. These conveyances, though voluntary, are good and effectual as between the parties, and are only liable to be questioned in certain cases, when the rights of creditors and subsequent purchasers are concerned. 4 Kent, 539, top page ; 2 Rand. 384 ; 1 Johns. Ch. 329, 336, and 1 Wash. C. C. 274. And such conveyances, when they have once been executed and delivered, cannot be recalled. Nor will a court of equity interfere, but will leave the parties where it finds them as to title.

That these are deeds of conveyance of the property embraced in them, subject to the life estate of the donor and wife, is believed to be settled by this court in the case of Wall v. Wall, 30 Miss. 91. But even if they were parts of a will, as insisted by counsel for the appellant, they would not affect any subsequent settlement or disposition of the property, which he might think proper to make. As a will they would be ambulatory in their nature, and in the power of the testator to alter or revoke at pleasure, at any time during his life. The devisees and legatees would take nothing until the death of the testator. These deeds as to the real estate operate as covenants to stand seized to the use of the donors, in whom the estate vests in possession, upon the determination of the life estate reserved to the donor and his wife. And it seems to be well settled by the courts in this country, that a deed conveying personal property, reserving the possession and use of the property to the donor during his life, is good and valid, though the deed be not made to a trustee for the parties in interest. Upon the whole, we are of opinion there is no error in the decree ; and it is therefore affirmed.