IN RE: THE ESTATE OF H. LEE SHARP, Deceased.

183 So. 470.

En Banc.

Opinion Filed August 2, 1938.

Rehearing Denied October 10, 1938.

*William N. Ellis* and *W. R. Robinson* and *Oscar W. Roberts, Jr.*, (Carrollton, Ga.) for Appellant;

*Akerman & Dial,* for Appellee.

PER CURIAM.—It appears that this cause was tried both before the County Judge and the Circuit Court upon a wrong theory.

No question as to the testamentary capacity of H. Lee Sharp was involved. Indeed it may be said that his capacity in that regard was not only presumed but admitted. The point involved in the controversy was not one of undue influence nor of testamentary capacity but whether the document filed with the Probate Judge for probate was in the circumstances in which it was made a will in fact.

The caveator, Clarence Sharp, contends that the document was not a will, first, because in the circumstances in which it was signed by his father a testamentary purpose did not exist; that the signing of the paper was a mere ceremonial observance necessary to obtain the degree in Masonry which Mr. Sharp at that time along with twenty or more persons sought to have conferred upon him; that the dominating purpose which actuated the signing of the document was not the calm, solemn and momentous purpose of disposing of his estate, but it was a mere form prescribed

by the society to be observed by the candidates for initiation who desired the degree; secondly, that there was absent from the document as it was signed the ambulatory character which is essential to the existence of a will. 68 C. J. 602; Schaefer v. Voyle, 88 Fla. 170, 102 South. Rep. 7; McDaniel v. Johns, 45 Miss. 632, text 541, Schouler on Wills, Executors and Administrators, 6 Ed., Vol. 1, Sec. 326.

Under the statute pertaining to wills in this State a will may be annulled in two ways: first, by drawing a new one, and secondly, by taking possession of the one drawn and destroying it by tearing or burning. Comp. Gen. Laws 1927, Sec. 5461. Therefore when one makes a will it must necessarily possess the ambulatory character which would enable the maker to get possession of it whenever he desired and annul it by tearing, burning or destroying it. If he has not the right to take possession of it then it is perfectly obvious that the document, whatever it may be, is no will.

Now if the maker of such a document as was made in this case did not have the right to go to the Secretary of the Lodge after the initiation and demand the possession of the document in order that he might destroy it, but possession of the paper could be held by the Secretary as Lodge evidence, then the maker of the paper had conformed to the Lodge ceremonial requirement and it was a Lodge document over the possession of which it had complete control, and it therefore follows that the document did not have the ambulatory character necessary to the existence of a valid will which would enable the maker of the document at any time to obtain possession of the paper upon a simple demand for its possession or by legal process to obtain it.

In the cause which was presented to the County Judge there was ample evidence to show that the making of the documents by the twenty or more novitiates assembled in the lodge room on the 12th day of December, 1922, to have conferred upon them the Fourteenth Degree in Masonry according to the Scottish Rite, was a mere ceremonial performance in which it was necessary for these novitiates to engage to the end that they might obtain the degree which they sought and which was the dominating and controlling purpose of the evening and the motivating control of all of their acts.

"Will.—In some of the continental Rites, and in certain high degrees, it is a custom to require the recipiendary to make, before his initiation, a will and testament, exhibiting what are his desires as to the distribution of his property at his deecase. The object seems to be to add solemnity to the ceremony, and to impress the candidate with the thought of death. But it would seem to be a custom which would be 'more honored in the breach than the observance.' It is not practiced in the York and American Rites.' Ency. on Free Masonry, Vol. 2, p. 849.

In order therefore for the Court to ascertain the real purpose of the making of that document it was essential that all the evidence which could have any bearing whatsoever upon the true nature of the transaction should have been received by the Court. This record discloses that that was not done. Much proffered evidence was excluded and many questions were disallowed which would have disclosed, according to the contention of the caveator, that the purpose in making the document was not a testamentary one.

Particularly was the attitude of the witness Groethe inimical to a judicial effort to extract the truth of the matter from the transactions as they were carried on in the

lodge room. His attitude was not only one of hostility to the caveator but it was one of ridiculously assumed superiority of the secrets of masonry over the rules of court and that all that was necessary for him to do to avoid legitimate questions which were propounded to him was to assert that the particular matter was a secret rule or regulation or rite which he could not divulge.

In the trial of this cause there was marked evidence of deference to that attitude which undoubtedly hampered, if it did not definitely cripple the power of the court to arrive at the true nature of the transaction. Every fact and circumstance and opinion of the persons engaged in the conferring of that degree in Masonry, whether they were lodge officers or novitiates, should have been laid before the court in perfect and clear frankness in order that the court might determine what the real purpose of the making of the document was.

Every fact and circumstance which was offered by the caveator in evidence to show that the document was when signed and delivered to the Secretary a lodge paper over which it had exclusive control should have been considered in order that the court might determine whether the paper possessed the ambulatory character which is essential to the existence of a valid will.

It was contended by the caveator that these important considerations were submerged and obliterated, if not totally ignored, by considering whether the signer of the document possessed testamentary capacity.

The making of a will by a testator, that is to say the writing of one and directing how his property shall be distributed after his death, was not a common law right and it exists only by virtue of the statute of wills. 68 C. J. 413. The very nature of the statutory right requires that all of the considerations which enter into such a document

should be solemnly, carefully, intelligently and purposefully observed. There should for instance be evidence that the maker had in his mind at the time the details of his business and the items of his property and the claims of others upon him for his favorable consideration and that in the contemplation of all these things, with a sound and disposing mind and memory, he directed how his property should be disposed of after his death.

It may be that if all the evidence which is admissible in these circumstances had been admitted by the Court it might result in a complete showing that neither the document itself in this case nor the circumstances in which it was made show that any such consideration whatsoever was given to its execution but on the other hand every transaction and circumstance would tend to show that the dominating purpose of the maker was not to dispose of his property in the manner in which the execution of a will would require, but was to obtain a degree in Masonry which he and all the other novitiates considered and which the officers of the lodge considered and which the Encyclopaedia of Masonry above cited shows was an essential ceremonial requirement to obtaining that degree, and that the document itself was a lodge paper to be kept according to the rules and ceremonies in possession of the lodge as evidence of a compliance by it with the requirements necessary for conferring the fourteenth degree upon the maker.

The evidence in the case as submitted also shows a lack of mature consideration of those things which a person considers when he makes a will and it also shows no purpose on the part of the maker to retain control of the paper that he might at any time destroy it if he desired, but on the other hand that document was executed hastily without mature consideration of those matters which a person is supposed to consider when he makes a will and without any

purpose of depositing it where at any time he might have control over it to destroy it if he so desired.

Even a brief review of the circumstances out of which this controversy grew might be unessential but in an abundance of precaution to secure an accurate investigation that would disclose the whole truth of this matter it might be well to know these salient facts; first, Mr. Sharp was married in Carroll County, Georgia, on the 20th day of November, 1912; second, to that marriage a son was born; third, some ten years later Mr. Sharp was in a Masonic lodge room seeking to have conferred on him the Fourteenth Degree of Masonry according to the Scottish Rite; fourth, there is no evidence that he knew before he entered the lodge room that he would be required to make a will disposing of his property; fifth, that the document printed and prepared by the lodge, with the exception of a few blank spaces, was handed to him and he was required to fill it out and return it to the Secretary which he did; sixth, the first page of the document required him to answer certain questions which he seems to have answered to the satisfaction of the lodge and which at least carried the implication that he was not living in a state of moral and legal desertion of his wife, up to the time of her death, and of his child, who was still alive, seventh, there is not the slightest evidence in the record that the maker of the document considered that there was any bar sinister upon the birth of his son, nor that he had been absolved from any consideration of him in the disposition of the father's property, eighth, the paper on its face does not carry the indicia of a regularly executed will. There is no *testimonium* clause nor attestation clause nor is there any evidence in the body of the paper that the maker undertook to particularly dispose of his property nor to make provision for the payment of his debts.

Therefore, on consideration of the above facts and the numerous errors committed by both the Circuit Court and the Probate Court, the cause should be reversed with directions to proceed with the investigation according to the principles announced above.

It is so ordered.

ELLIS, C. J., and WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., concurs in the conclusion.