475 So.2d 935 (1985)
Gertrude BLADES, Lawrence Bain, As Heirs for Helen Johnson, Deceased, Ruth Clark, Barbara Ann Johnson, Elaine Pool, Sammy Johnson and Malachi Johnson, Appellants,
v.
Yvonne R. WARD, Appellee.
No. 85-106.
District Court of Appeal of Florida, Third District.
September 3, 1985.
Rehearing Denied October 4, 1985.
*936 Melvin Schaffer, Miami, for appellants.
Kwitney, Kroop & Scheinberg and Richard I. Kroop, Miami Beach, for appellee.
Before NESBITT, FERGUSON and JORGENSON, JJ.
NESBITT, Judge.
The appellants, all either heirs of or beneficiaries under a prior will of Lenora Johnson, the decedent, appeal an adverse judgment on their petition to revoke a will. We reverse.
Lenora Johnson died on January 19, 1984.[1] Yvonne R. Ward, a granddaughter of the decedent, filed a petition for administration seeking appointment as personal representative to administer a will executed by the decedent on October 19, 1983. The subject will appointed Ward personal representative of the estate and also named Ward as the sole beneficiary of the estate. The court appointed Ward personal representative and the will was admitted to probate on March 5, 1984.
Subsequently, the appellants filed a petition for revocation of probate pursuant to Florida Rule of Probate and Guardianship Procedure 5.270 on the ground of undue influence. See § 732.5165, Fla. Stat. (1983). The matter proceeded to trial on October 2, 1984, at which the appellants presented a number of witnesses to support their claim of undue influence. Among the evidence presented was testimony concerning the physical and mental condition of the decedent which tended to show her susceptibility to influence. During the time in question, the decedent was ninety years of age, was a double amputee (legs), and was completely blind. She required assistance to feed herself, to bathe, to get out of bed, and to make it to the bathroom. In addition, the decedent was under medication for an enlarged heart and diabetes. All the witnesses testified that she could not concentrate sufficiently to engage in conversation for more than a few minutes. Further testimony established facts concerning Ward's relationship with the decedent and Ward's active procurement of the contested will.[2]
Following the presentation of the appellant's case, Ward's counsel became aware that the trial court was of the preliminary view that appellants had failed to prove their claim. For this reason, the defense rested without presenting any evidence, although, as conceded by Ward's counsel in argument to this court, the opportunity to present evidence in defense of the claim had been afforded by the trial court. The trial court, thereafter, entered judgment for Ward, finding the appellants had failed to establish undue influence by the greater weight of the evidence. This appeal followed.
In In re Estate of Carpenter, 253 So.2d 697 (Fla. 1971), the supreme court recognized the majority rule that because of the *937 difficulty of obtaining direct proof in cases where undue influence is alleged, will contestants can satisfy their burden initially by showing sufficient facts to raise a presumption of undue influence. If this is done, and the presumption remains unrebutted, the court held that the trial court is "required" to find undue influence and deny the will probate. 253 So.2d at 701. Since it is undisputed that any showing made by the appellants stands unrebutted, the only issue is whether the appellants presented sufficient evidence to raise the presumption of undue influence.
It is well settled in Florida that the presumption of undue influence arises when the contestants demonstrate that a substantial beneficiary under a will occupied a confidential relationship with the testator and was active in procuring the contested will. Carpenter, 253 So.2d at 701 and cases cited.
The leading case in Florida defining the term "confidential relationship" is Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927). Therein, the supreme court held:
The term "... confidential relation," is a very broad one... . The origin of the confidence is immaterial. [It] embraces both technical fiduciary relations and those informal relations which exist wherever one man trusts in and relies upon another.
... .
The relation and duties involved need not be legal; they may be moral, social, domestic or personal.
113 So. at 420-21. See also Carpenter, 253 So.2d at 701.
In the present case, the first consideration is that the decedent and Ward were related as grandmother and granddaughter. Although the existence of a family relationship does not necessarily mean that a confidential relationship exists, such is the case where there is a "close" relationship between the relatives and trust or confidence of some kind is shown to exist. See Carpenter, 253 So.2d at 701. Ward can hardly take the position that she was not close to her grandmother where she is putting forth a will which leaves everything to her to the exclusion of the decedent's children and other grandchildren. Further, the decedent's prior will, made a part of the record by the appellants, indicates that the decedent did have trust and confidence in Ward. In the prior will, Ward was given the responsibility of administering her mother's (decedent's daughter's) share of the estate passing by said will. An additional and perhaps more important indication of the decedent's trust and confidence in Ward was Ward's control of the decedent's money. Ward testified[3] that her grandmother, the decedent, would endorse her social security checks and give them to Ward to cash. Ward would cash the checks for her grandmother and then pay her grandmother's bills. This evidence put forth by the appellants was clearly sufficient to raise the inference that a confidential relationship existed between Ward and the decedent, especially in light of the supreme court's broad definition of confidential relation set forth in Quinn. See Carpenter, 253 So.2d at 701-02.
The final question is whether the appellants have shown that Ward was active in the procurement of the contested will. There can be little doubt that a sufficient showing has been made on this point. The undisputed facts are as follows. Two months prior to the execution of the will, the decedent, in the presence of only Ward and a notary public, stated "after expenses of my last illness, I want everything left to Yvonne Ward." The notary public was a friend of Ward and her husband, and the decedent did not know the notary public. The notary public prepared the will[4] and presented it for execution on October 19, 1983, during the decedent's birthday party. *938 Although a great number of friends and relatives were in the decedent's home when the will was executed, only two witnesses and the notary public were present in the room when the execution took place. The notary public was not known by any of the relatives of the decedent who testified (other than Ward), and it was Ward who invited the notary public to the party. In addition, Ward invited to the party one of the witnesses to the execution of the will. This witness was a good friend of the other witness who was the decedent's personal nurse. None of the relatives of the decedent, other than Ward, were made aware that a new will had been executed. Finally, following the decedent's death, it was Ward who produced the will for probate. All these facts taken together are clearly sufficient to raise the inference of active procurement of the will by Ward. See Carpenter, 253 So.2d at 702 (setting forth a nonexclusive list of factors to consider in determining active procurement, of which, at least five are present in the instant case).
Once the appellants had produced sufficient evidence to raise the presumption of undue influence by showing Ward, a substantial beneficiary under the contested will, had been in a confidential relationship with the decedent and had been active in the procurement of the contested will, the burden shifted to Ward to come forward with a reasonable explanation for her active role in the decedent's affairs, and specifically, in the preparation of the will. Carpenter, 253 So.2d at 704. This burden placed on Ward was explained in Carpenter, 253 So.2d at 704:
First, the burden will be satisfied when the beneficiary comes forward with a reasonable explanation for his or her active role in the decedent's affairs. The precise nature of the explanation will vary depending on the facts giving rise to the presumption, and the sufficiency of the explanation to rebut the presumption will be for the county judge to determine subject to review by an appellate court. Second, when the burden is satisfied the presumption will vanish from the case and the county judge will be empowered to decide the case in accord with the greater weight of the evidence ... without regard to the presumption. Third, since the facts giving rise to the presumption are themselves evidence of undue influence, those facts will remain in the case and will support a permissible inference of undue influence, depending on the credibility and weight assigned by the trial judge to the rebuttal testimony.
In the present case, the second step was never reached and the presumption never disappeared because Ward failed to come forward with any reasonable explanation of her active role in the decedent's affairs.[5] Since the appellants established sufficient facts to raise the presumption of undue influence, and the presumption remained unrebutted, the trial court was required to find undue influence and enter judgment for the appellants. See Carpenter, 253 So.2d at 701.
Accordingly, it was error for the trial court to enter judgment for Ward and we reverse and remand this cause with directions to enter judgment for the appellants on their petition for revocation of probate.
NOTES
[1] No transcript of the final hearing has been produced. Accordingly, the facts herein are gathered from the statement of the evidence and proceedings which has been made a part of the record pursuant to Florida Rule of Appellate Procedure 9.200(b)(3).
[2] These facts are discussed in the opinion, infra.
[3] Ward was called as a hostile witness by the appellants.
[4] See § 454.23, Fla. Stat. (1983) (any person not licensed or otherwise authorized by the Supreme Court of Florida who shall practice law is guilty of a first degree misdemeanor); The Florida Bar v. Brumbaugh, 355 So.2d 1186, 1194 (Fla. 1978).
[5] Although Ward did testify when called as a hostile witness by the appellants, see supra note 3, the statement of evidence, see supra note 1, on which we must rely, contains no reference to any testimony by Ward which explains her active role in the decedent's affairs or rebuts the charge of undue influence.