483 So.2d 889 (1986)
Harry A. AHLMAN, Appellant,
v.
Alice Francis WOLF, Appellee.
No. 84-2412.
District Court of Appeal of Florida, Third District.
March 4, 1986.
Rehearing Denied April 14, 1986.
*890 Nancy J. Pollock, North Miami, for appellant.
Paul, Landy, Beiley & Harper and Robert M. Sondak, Miami, for appellee.
Before BARKDULL, BASKIN and FERGUSON, JJ.
BASKIN, Judge.
This appeal follows the entry of a Final Judgment invalidating the will and codicil of Mary C.W. Hand offered for probate by Mrs. Hand's social secretary, Harry Ahlman. The trial court sustained appellee's objections to probate, finding that the will and codicil were the product of undue influence exerted by Ahlman, a substantial beneficiary under the will, and by Dr. Raymond Breitbart, the decedent's long-time personal physician, and that Mrs. Hand lacked testamentary capacity at the time the codicil was executed. We affirm.
In the Final Judgment, the trial court made detailed findings of fact:
1. Mary C.W. Hand died on December 14, 1982, at the age of 97. Harry A. Ahlman filed a petition for administration of the last will and codicil of Mrs. Hand on December 29, 1982. Objections to that petition were filed on January 12, 1983, by Alice Francis Wolf, the niece and closest living relative of the deceased. Mrs. Wolf also filed a petition to establish and probate a prior will, which petition is not the subject of these proceedings. The will and codicil which are sought to be probated are dated June 25, 1980, and September 16, 1980, respectively.
2. There are three categories of objections to the probate of the will and codicil. First, it is alleged that the will was not executed in accordance with § 732.502, Florida Statutes [1979], in that a witness to the will, Mary Addis, signed as a witness outside of the presence of the testatrix and the other witness, Robert R. White. Second, it is alleged that Mrs. Hand lacked testamentary capacity at the time she executed the will and/or codicil. Third, it is alleged that the will and codicil are the product of undue influence by Harry A. Ahlman and Dr. Raymond Breitbart, both of whom were fiduciaries of Mrs. Hand. The objections allege that Mrs. Hand placed her trust and confidence in Mr. Ahlman and Dr. Breitbart, who were major beneficiaries of the will, and who allegedly were active in procuring the will. In addition, it is alleged that both the will and the codicil are the product of undue influence by Harry Ahlman and Dr. Breitbart upon the decedent in the form of overpersuasion, duress, coercion and artful and fraudulent contrivance to such a degree that there was a destruction of the free agency or free will of Mrs. Hand.
3. At trial, the proponent called Robert R. White, the attorney who drew the will and codicil, to testify as to their execution. The will and codicil were admitted into evidence and the proponent rested. Then the contestant called witnesses, offered evidence, and rested. The proponent then moved to dismiss the petition, to overrule the objections, and to deny the contestant the benefit of the presumption of undue influence as set *891 forth by the Florida Supreme Court in In Re Estate of Carpenter, 253 So.2d 697 (Fla. 1971). The court granted the motion to dismiss solely as it was based upon testamentary capacity at the time of the making of the will, and denied the balance of the motions. Then, the proponent called witnesses, offered evidence, and rested. Thereafter the contestant offered additional evidence and testimony and rested.
4. The evidence presented shows that both Harry Ahlman and Dr. Breitbart were substantial beneficiaries under the will and codicil. Dr. Breitbart was not named in any of Mrs. Hand's prior wills and codicils, while Mr. Ahlman would have received a far more modest bequest in Mrs. Hand's earlier will. Mr. Ahlman and Dr. Breitbart each had a fiduciary relationship with Mrs. Hand and had her trust and confidence. Dr. Breitbart was Mrs. Hand's physician, who, in 1980, visited Mrs. Hand's home on a very frequent basis. Mr. Ahlman was Mrs. Hand's escort and constant companion, became her social secretary in March of 1980, and had authority over the management of most of Mrs. Hand's affairs. Mrs. Hand signed a power of attorney in Mr. Ahlman's favor prior to the time the will was executed.
To determine whether Ahlman actively procured the contested will and codicil, the trial court applied the test established in In Re Estate of Carpenter, 253 So.2d 697 (Fla. 1971), and concluded:
5. While there were sharp disputes in the testimony and evidence regarding the elements of active procurement as set forth in the Carpenter decision, the court finds that Harry A. Ahlman actively procured the will and codicil within the meaning of Carpenter. Mr. Ahlman was present when the will and codicil were executed. He was present on occasions when Mrs. Hand expressed the desire to make a will. He contacted Mr. White, who Mrs. Hand did not previously know, to make an appointment for Mr. White to come to Mrs. Hand's home to discuss the will. The Court is cognizant of the fact that Lucille Bell testified that she recommended Mr. White to Mrs. Hand. Mrs. Hand's prior wills and codicils had been prepared by her lawyer (and friend) in New Jersey, Elmer J. Bennett, and by her lawyer (and friend) in Miami, George Salley. There was no satisfactory reason offered which explained Mrs. Hand's sudden change in the selection of an attorney. The Court finds that Mr. Ahlman influenced the selection of Mr. White by Mrs. Hand. Mr. Ahlman further knew the contents of the will and codicil prior to the time they were prepared. Mr. Ahlman was present with Mrs. Hand and Mr. White when they discussed the will prior to its preparation. Mr. Ahlman and Mr. White further discussed the contents of the will before its preparation. As to the codicil, Mr. White discussed the codicil only with Mr. Ahlman, when they met at Mr. White's office on September 15, 1980, the day before the codicil was signed by Mrs. Hand. Mrs. Hand was not even present at that meeting. Mr. Ahlman called on Mary Addis to witness the will and John LeGette, a friend of Mr. Ahlman's, to witness the codicil. Although the will and codicil were kept by Mr. White in his safe deposit box, Mr. White, on the instructions of Mr. Ahlman, kept the content of the will and codicil secret from Mrs. Wolf.
Under a Carpenter analysis, a presumption of undue influence arises when a substantial beneficiary who occupies a confidential relationship with the testator actively procures the will. In the case under consideration, the trial court found that most of the Carpenter criteria for determining the active procurement of the will were satisfied. While we do not necessarily agree with all of the trial court's findings, we recognize that a majority of the factors signifying active procurement were present. See In re Estate of Lightfoot, *892 433 So.2d 607 (Fla. 4th DCA 1983), review denied, 444 So.2d 417 (Fla. 1984).
Carpenter informs us that when the circumstances give rise to a presumption of undue influence, the burden shifts to the beneficiary to come forward "with a reasonable explanation of his... active role in the decedent's affairs, and specifically, in the preparation of the will... ." Carpenter, 253 So.2d at 704. Although the judgment did not address either the presumption or whether Ahlman successfully rebutted the presumption, we do not find this omission to be fatal. Lightfoot, 433 So.2d at 609.
The record demonstrates that Ahlman rebutted any presumption of undue influence: his active role in the decedent's affairs and in the preparation of her will are reasonably explained by his position as Mrs. Hand's social secretary. Carpenter requires only a minimal response to overcome the presumption. Once the presumption vanishes, the trier of fact must determine whether the preponderance of the evidence establishes the existence of undue influence:
[S]ince the facts giving rise to the presumption are themselves evidence of undue influence, those facts will remain in the case and will support a permissible inference of undue influence, depending on the credibility and weight assigned by the trial judge to the rebuttal testimony.
Carpenter, 253 So.2d at 704. The evaluation of conflicting evidence is the function of the trial court. The trier of fact must weigh the evidence, assess the credibility of the witnesses, and determine whether the evidence establishes the occurrence of undue influence. Cripe v. Atlantic First National Bank, 422 So.2d 820 (Fla. 1982); Lightfoot. We find no error in the trial court's exercise of its responsibility.[*]
Affirmed.
NOTES
[*] Our disposition of this case renders it unnecessary to reach the issue of Mrs. Hand's testamentary capacity at the time the codicil was executed.