520 So.2d 76 (1988)
Dorothy ELSON, Appellant,
v.
Amanda VARGAS, As Personal Representative of the Estate of Paula Oliver, Deceased, Appellee.
No. 87-184.
District Court of Appeal of Florida, Third District.
February 9, 1988.
Rehearing Denied March 8, 1988.
Murphy & Parente and Joseph H. Murphy, Coral Gables, for appellant.
G. Frank Quesada and Renato Perez, Coral Gables, James C. Blecke, Miami, and Susan S. Lerner, for appellee.
Before SCHWARTZ, C.J., and HENDRY and NESBITT, JJ.
PER CURIAM.
Dorothy Elson, sister-in-law of the deceased, Paula Oliver, appeals from an order denying her petition to revoke decedent's will. We affirm the trial court's decision.
Under the will being contested, the decedent, Paula Oliver, made Amanda Vargas her sole beneficiary. Vargas had cared for Oliver during her final months of life. Elson filed a petition to revoke Oliver's will alleging that it was invalid as a result of the undue influence which Vargas held over Oliver at the time the will was procured. After a non-jury trial, the judge upheld the will. Elson appeals.
It is well established that when a substantial beneficiary under a will (1) has a confidential relationship with the testator, and (2) is active in procuring the contested will, the presumption of undue influence arises. In re Estate of Carpenter, 253 So.2d 697, 701 (Fla. 1971); Blades v. Ward, 475 So.2d 935 (Fla. 3d DCA 1985). Here, Paula Oliver, the testatrix, placed special trust and confidence in Amanda Vargas. Testimony from both sides clearly proved the existence of a confidential relationship. In addition, Vargas was instrumental in the procurement of Oliver's will and was the sole beneficiary under the will. Toward the end of 1984, Vargas went alone to an attorney's office and had him prepare a will for Oliver designating herself as both the sole beneficiary and personal representative. *77 Vargas paid the attorney and took possession of the document. Vargas's attorney never met Oliver or discussed her will with her. At no time during the will's preparation did Oliver have independent, disinterested advice. See In re Carpenter, 253 So.2d at 702; In re Knight's Estate, 108 So.2d 629 (Fla. 1st DCA 1959). Vargas contacted three neighbors to witness Oliver's signing of the will on January 26, 1985. Within two weeks of the signing, Oliver was admitted to Coral Gables Hospital and was declared incompetent approximately three weeks after admission. Soon after, Vargas delivered the will to her attorney who later presented it at the competency hearing where Elson was appointed Oliver's guardian. These facts are clearly sufficient to establish active procurement of the will by Vargas, and, coupled with the proof of a confidential relationship, a presumption of undue influence arises.
Once sufficient evidence of undue influence was established, it became the burden of the will proponent to come forward with a reasonable explanation for her active role in the decedent's affairs to rebut the presumption of undue influence. Carpenter, 253 So.2d at 704; In re Estate of Paulk, 503 So.2d 368 (Fla. 1st DCA), review denied, 513 So.2d 1062 (Fla. 1987); Blades, 475 So.2d at 938. This court, in deciding Ahlman v. Wolf, 483 So.2d 889, 892 (Fla. 3d DCA 1986), stated that "Carpenter requires only a minimal response to overcome the presumption." The final order at issue here did not address either the presumption or whether Vargas successfully rebutted the presumption; this omission, however, does not negate the trial court's findings. Ahlman, 483 So.2d at 892; In re Estate of Lightfoot, 433 So.2d 607, 609 (Fla. 4th DCA 1983), review denied, 444 So.2d 417 (Fla. 1984).
As an explanation for her actions, Vargas testified that she took care of the enormous physical needs of the terminally ill testatrix, assisted her in cooking and housekeeping, and ran all her errands. There was independent testimony that Oliver hated the idea of going to a nursing home or hospital, saying she preferred to die at home. Vargas also helped Oliver with her financial matters. The president of a Miami bank where Oliver had an account verified that Oliver had authorized Vargas to do her banking for her.
Neighbors, health care workers, a doctor, and a police officer who had contact with Paula Oliver during her last months described her as a very strong-willed woman who wanted things done her way. There was testimony from a disinterested witness that Oliver controlled Vargas and not vice versa. Such testimony could refute any presumption that Oliver was overly susceptible to Vargas's influence. See In re Peter's Estate, 155 Fla. 453, 20 So.2d 487 (1945); In re Starr's Estate, 125 Fla. 536, 170 So. 620, 623 (1935). There was evidence that once the will was delivered to her, Oliver maintained it in a drawer by her bedside. This would support a finding that the document was in her physical control. See In re Sharp's Estate, 133 Fla. 802, 183 So. 470 (1938); cf. In re Algar's Estate, 383 So.2d 676 (Fla. 5th DCA), (wills are ambulatory and revocability is an essential element of a will), review denied, 389 So.2d 1107 (Fla. 1980). In addition, those neighbors who witnessed the signing of the will found the testatrix to be in full command of her mental faculties. See Butler v. Williams, 141 So.2d 4, 5 (Fla. 2d DCA 1962). One neighbor said that Oliver was well enough to know what she was doing when she signed the will. Another testified that he asked Oliver if she knew what she was doing by making Vargas her sole beneficiary and that the decedent responded affirmatively stating that Vargas was the only person who took care of her when she needed help.
Finally, while Dorothy Elson, Oliver's sister-in-law, could be considered to be within the general parameters of the testatrix's natural bounty, § 732.103(5), Fla. Stat. (1985), the connection is remote. There was evidence that after the death of Mr. Oliver, approximately four years before that of his wife, Elson and her brother's wife had little contact. The judge could infer that since Elson and Oliver were not related by blood but only through marriage, the appellant was not a natural object *78 of Oliver's bounty. See Skelton v. Davis, 133 So.2d 432 (Fla. 3d DCA 1961). In summary, a careful review of the record demonstrates that Vargas offered ample evidence to rebut the presumption of undue influence.
Having satisfied the burden of coming forward with a reasonably credible explanation of the facts giving rise to the presumption, Vargas dissipated the presumption and it was relegated to a permissible inference of undue influence within the proper province of the trier of fact to decide. Carpenter, 253 So.2d at 704; Ahlman, 483 So.2d at 892. In weighing the evidence, the trial judge found that the scales tilted in favor of upholding the will. Even though this is a close case on the facts, we must give all deference to the trial judge's decision, reached, as it was, after hearing the evidence, questioning the witnesses, and observing their demeanor. Marshall v. Johnson, 392 So.2d 249 (Fla. 1980); Shaw v. Shaw, 334 So.2d 13, 16 (Fla. 1976). Reweighing of the evidence is not this court's function. Marshall, 392 So.2d at 251; Delgado v. Strong, 360 So.2d 73, 75 (Fla. 1978).
Consequently, we affirm the trial judge's order upholding the will.