536 So.2d 263 (1988)
SUN BANK/MIAMI, N.A., As Personal Representative of the Estate of Lilly Glickstein, Deceased, and Robert Grayson, et al., Appellants,
v.
Martha HOGARTH, Helaine Newman, Howard Glickstein and Herbert Gladstone, Appellees.
Nos. 87-2604, 87-2607.
District Court of Appeal of Florida, Third District.
November 8, 1988.
Rehearing Denied February 7, 1989.
*265 Therrel Baisden & Meyer Weiss and Howard A. Setlin, Joe N. Unger, for appellants.
Britton & Kantner and G. Michael Keenan and Jack Britton, George Volsky, for appellees.
Before SCHWARTZ, C.J., and BASKIN, J., and JOSEPH P. McNULTY, Associate Judge.
BASKIN, Judge.
This appeal follows the entry of Final Judgment revoking probate of the will of Lilly Glickstein executed on February 24, 1978. The trial court set aside both the will and an amended trust agreement executed on the same date, as well as a will and first codicil executed by Lilly Glickstein on December 13, 1977. The trial court ruled that both wills, the codicil, and the amended trust agreement were the product of undue influence by Robert Grayson, a primary beneficiary under the revoked wills. Sun Bank, personal representative under both wills, Robert Grayson, and Peggy Bonomo, his sister, appealed the decision of the trial court. The appeals were consolidated. We affirm.
In its Final Judgment, the trial court enunciated detailed findings of fact:
1. LILLY GLICKSTEIN executed a Last Will and Testament on January 9, 1975.
2. Pursuant to the 1975 Will, Petitioners HERBERT GLADSTONE and MARTHA HOGARTH were to share in the assets of a Marital Trust created by LILLY GLICKSTEIN'S husband over which she had a power of appointment, and Petitioners HELAINE NEWMAN and HOWARD GLICKSTEIN were to share in the remainder of LILLY GLICKSTEIN'S estate, along with ROBERT GRAYSON and PEGGY BONOMO.
3. On December 13, 1977, and December 19, 1977, LILLY GLICKSTEIN executed a second Last Will and Testament and the First Codicil, respectively.
4. Pursuant to the December 13, 1977, Will, ROBERT GRAYSON and PEGGY BONOMO were to share in the assets of the Marital Trust established by LILLY GLICKSTEIN'S husband to the exclusion of Petitioners HERBERT GLADSTONE and MARTHA HOGARTH and were to share in the remainder of LILLY GLICKSTEIN'S estate to the exclusion of Petitioners HELAINE NEWMAN, HOWARD GLICKSTEIN and MARTHA HOGARTH.
5. On February 24, 1978, LILLY GLICKSTEIN executed a third Last Will and Testament and Amended Trust Agreement. Pursuant to the terms of the February, 1978, Last Will and Amended Trust Agreement, GRAYSON and BONOMO would again share in the remainder of the Marital Trust established by LILLY GLICKSTEIN'S husband and the remainder of LILLY'S estate to be distributed pursuant to the Amended Trust Agreement to the exclusion of Petitioners HERBERT GLADSTONE, HELAINE NEWMAN, HOWARD GLICKSTEIN, and MARTHA HOGARTH.
The trial court applied the test set forth in In Re Estate of Carpenter, 253 So.2d 697 (Fla. 1971), appeal after remand, 289 So.2d 410 (Fla. 4th DCA), cert. denied, 300 So.2d 896 (Fla. 1974), to determine whether the second and third wills and the amended trust agreement were the products of undue influence. The court observed:
6. In January of 1977, LILLY GLICKSTEIN suffered from advanced organic brain syndrome and Alzheimer's disease, a progressive disease, and she was suffering from the disease when she executed the Wills, Codicil, and Amended Trust Agreements on December 13, 1977, *266 December 19, 1977, and February 24, 1978.
7. ROBERT GRAYSON was a substantial beneficiary under the December 13, 1977, Will and February 24, 1978, Will and Amended Trust Agreement.
8. ROBERT GRAYSON enjoyed a confidential relationship with LILLY on December 13, 1977, December 19, 1977, and February 24, 1978.
9. ROBERT GRAYSON actively procured the December 13, 1977, Last Will and Testament of LILLY GLICKSTEIN and the February 24, 1978, Last Will and Testament and the Amended Trust Agreement of LILLY GLICKSTEIN.
10. ROBERT GRAYSON was present at the execution of the February 24, 1978, Last Will and Testament of LILLY GLICKSTEIN and the Amended Trust Agreement.
11. ROBERT GRAYSON was present on occasions when LILLY GLICKSTEIN expressed a desire to make her December 13, 1977, Will and February 24, 1978, Will and Amended Trust Agreement.
12. ROBERT GRAYSON was involved in the selection of the THERRELL, BAISDEN, MEYER, WEISS law firm to draw the February 24, 1978, Last Will and Testament of LILLY GLICKSTEIN and the Amended Trust Agreement, which selection was concealed from LILLY GLICKSTEIN'S former lawyer, HARRY SMITH, allegedly for the reason of not hurting MR. SMITH'S feelings.
13. ROBERT GRAYSON had knowledge of the contents of the December 13, 1977, Last Will and Testament of LILLY GLICKSTEIN prior to its execution and had knowledge of the contents of the February 24, 1978, Last Will and Testament of LILLY GLICKSTEIN and the Amended Trust Agreement prior to its execution.
14. ROBERT GRAYSON was involved in giving instructions on the preparation of the December 13, 1977, Last Will and Testament of LILLY GLICKSTEIN and the February 24, 1978, Last Will and Testament of LILLY GLICKSTEIN and the Amended Trust Agreement.
15. Between December of 1978 and November of 1984, ROBERT GRAYSON and his wife and his children and his sister, PEGGY BONOMO, and her husband and her children received distributions from LILLY GLICKSTEIN'S Trust in the sum of Three Hundred Thirty Eight Thousand Dollars ($338,000.00).
These facts support revocation of probate.
Additionally, the record discloses that although Peggy Bonomo did not actively participate in the execution of the wills of December 13, 1977, and February 24, 1978, and the amended trust agreement, Robert Grayson informed her of their contents prior to their execution. The evidence also indicates that both Robert Grayson and Peggy Bonomo, his sister, concealed these two wills, the amended trust agreements, and the trust distributions from the rest of the family.
Under Carpenter, a presumption of undue influence arises when a substantial beneficiary under a will occupies a confidential relationship with the testator and is active in procuring the contested will. Carpenter, 253 So.2d at 701. The evidence before the trial court demonstrates that Robert Grayson occupied a confidential relationship with Lilly Glickstein. Lilly was not knowledgable in financial affairs. She depended on her husband, and as her Alzheimer's disease and organic brain disorder progressed, on her brother-in-law, Robert Grayson's father, to handle her finances. Upon his father's death, Robert Grayson assumed the role of financial manager. He was named trustee of the trust that his father established with Lilly's money to provide for her care.
The trial court found that Robert Grayson was active in procuring the contested wills. Robert Grayson was present when Lilly expressed her desire to make a new will; Robert Grayson recommended the attorney who prepared the will of February 24, 1978; Robert Grayson knew of the contents of both wills and of the amended trust agreement prior to their execution; Robert Grayson instructed the attorneys on the preparation of both wills and of the amended trust agreement. Although *267 not all of the Carpenter indicia are present, there is ample evidence to give rise to the presumption of undue influence. The Carpenter criteria are not exclusive, but are merely illustrative of facts which support a presumption of undue influence.
According to Carpenter, once the presumption of undue influence arises, the burden of persuasion shifts to the beneficiary to offer "a reasonable explanation for his or her active role in the decedent's affairs, and specifically, in the preparation of the will... ." Carpenter, 253 So.2d at 704. Only a minimal response is necessary to overcome the presumption. Ahlman v. Wolf, 483 So.2d 889 (Fla. 3d DCA 1986). Although the final judgment omits any reference to the offer of such an explanation, the omission is not dispositive. See Ahlman, 483 So.2d at 892; In Re Estate of Lightfoot, 433 So.2d 607, 609 (Fla. 4th DCA 1983), review denied, 444 So.2d 417 (Fla. 1984). The record provides the explanation.
Grayson offered a reasonable explanation for his involvement in Lilly Glickstein's affairs. Her lack of financial acumen and her progressive Alzheimer's disease and organic brain disorders left her dependent on Grayson's father and, upon his death, on Grayson. This minimal showing of reasonableness is sufficient to overcome the presumption of undue influence. Ahlman.
The explanation dispels the presumption of undue influence. It is then the role of the trial court to determine, by the greater weight of the evidence, whether the facts support a finding of undue influence. Ahlman; Cripe v. Atlantic First Nat'l Bank, 422 So.2d 820 (Fla. 1982). Because "the facts giving rise to the presumption are themselves evidence of undue influence, those facts will remain in the case and will support a permissible inference of undue influence, depending on the credibility and weight assigned by the trial judge to the rebuttal testimony." Carpenter, 253 So.2d at 705. After reviewing the record, we are unable to say that the facts before the trial court do not support a finding of undue influence. See Elson v. Vargas, 520 So.2d 76 (Fla. 3d DCA), review denied, 528 So.2d 1181 (Fla. 1988); Ahlman; Lightfoot; Heasley v. Evans, 104 So.2d 854 (Fla. 2d DCA 1958). Accordingly, we affirm his decision.
Appellant Bonomo argues that even if this court upholds the trial court's decision that Grayson exercised undue influence in the procurement of the wills of December 13, 1977, and February 24, 1978, and the amended trust agreement, section 732.5165, Florida Statutes (1987), should protect her inheritance under the will of February 24, 1978, and the amended trust agreement. We reject that contention.
Section 732.5165, Florida Statutes (1987), provides: "A will is void if the execution is procured by fraud, duress, mistake, or undue influence. Any part of the will is void if so procured, but the remainder of the will not so procured shall be valid if it is not invalid for other reasons." The trial court did not merely declare invalid a portion of the wills of February 24, 1978, and the December 13, 1977, and the amended trust agreement. The court declared all of the contested documents void because it found that Grayson exercised undue influence. Even if the trial court had not totally invalidated these instruments, this is not a case in which there was no relationship between the party exercising the undue influence and the other beneficiary of the influenced instrument. In Re Kiggins' Estate, 67 So.2d 915 (Fla. 1953); In Re Van Horne's Estate, 305 So.2d 46 (Fla. 3d DCA 1974), cert. denied, 320 So.2d 388 (Fla. 1975). The evidence indicates that Grayson's actions were undertaken not only to benefit himself, but also to benefit Bonomo.
Finally, appellant Sun Bank argues that the trial court lacked jurisdiction over the amended trust agreement, first, because the trust was not testamentary but inter vivos, and second, because all of the beneficiaries of the trust were indispensable parties but not all were served. Although the Lilly Glickstein trust was originally created to provide for Lilly's maintenance, the amended trust agreement was *268 specifically referred to in the will of February 24, 1978, as a pour-over trust for the residuary of her estate. The pour-over trust was an integral part of Lilly Glickstein's will of February 24, 1978. Without it, the will does nothing more than appoint a personal representative and exercise the power of appointment under her husband's trust, a result not likely to have met Lilly Glickstein's intent. See In Re Estate of Baer, 446 So.2d 1128 (Fla. 4th DCA), review denied, 456 So.2d 1181 (Fla. 1984). Both the will and the amended trust agreement must be read together to give effect to her testamentary plan. Consequently, we hold that the amended trust agreement was incorporated in the will of February 24, 1978, and therefore, the probate court had jurisdiction to determine its validity. § 732.512(1), Fla. Stat. (1987).
A court called upon to terminate a trust must be careful not to defeat any object of the trustor which is obvious from the declaration. To effect that end, the court must decline to act when parties interested in the trust are not before the court. Byers v. Beddow, 106 Fla. 166, 171, 142 So. 894, 896 (1932). The trustor's intention is paramount. Blocker v. Blocker, 103 Fla. 285, 137 So. 249 (1931). In this case, Lilly Glickstein's intentions are not defeated by the court's declaring the amended trust agreement void. The termination of the amended trust agreement does not affect the interests of the beneficiaries who were not served. All of these parties will receive the same amount under the will of January 9, 1975, that they would have under the amended trust agreement. The only change is in the vehicle through which they take  a specific bequest under a will as opposed to a disbursement from a pour-over trust.
AFFIRMED.